COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, AtLee and Chaney
Argued at Norfolk, Virginia

**UNPUBLISHED**

ALLEN JAMAL RALPH

                                            MEMORANDUM OPINION[*] BY

v.      Record No. 0826-21-1                  JUDGE RANDOLPH A. BEALES
                                               MAY 10, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Michael A. Gaten, Judge

Charles E. Haden for appellant.

Justin B. Hill, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

On October 26, 2020, Allen Jamal Ralph pled guilty to three counts of use of a firearm in the commission of a felony, one count of robbery, and one count of conspiracy to commit robbery. Consistent with the written plea agreement, the Circuit Court of the City of Hampton sentenced Ralph to a total of fifty-three years of incarceration with thirty-eight years suspended. In this appeal, Ralph argues that the trial court erred in accepting his guilty pleas and abused its discretion in sentencing him according to the terms of the plea agreement.

## I. BACKGROUND

At a hearing on the entry of Ralph's guilty pleas, the Commonwealth proffered that if the case had proceeded to trial, the evidence would have shown that Ralph and two other men devised a plan to rob a GameStop store in Hampton. The evidence showed that Ralph agreed to serve as the getaway driver and drove the three of them to the Hampton GameStop location.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

When they arrived, Ralph drove the car around the parking lot of the shopping center and parked in different spaces to survey the store. The two other men entered the store with a gun while Ralph stayed in the car. The armed perpetrators locked the manager of the GameStop and two customers inside the store and pointed the firearm at all three of the victims. They took personal property from all three victims, took money from the cash register, and forced the manager to open the safe.

Hampton police officers arrived and actually saw the robbery in progress. The officers pursued the robbers as they fled through the back door of the store. As the robbers ran, they dropped the gun and some items taken during the robbery. Eventually, they ran back out into the parking lot, where Ralph was still waiting to pick them up. All three were apprehended by police in the parking lot.

The Commonwealth and Ralph reached an agreement whereby Ralph agreed to plead guilty to three counts of use of a firearm in the commission of a felony, one count of robbery, and one count of conspiracy to commit robbery. In exchange, the Commonwealth agreed to *nolle prosequi* several other charges, including indictments for abduction and additional counts of use of a firearm in the commission of a felony. The written plea agreement memorialized the parties' joint recommendation that Ralph receive a sentence of fifty-three years with thirty-eight years of that sentence suspended.

Before accepting the plea agreement, the trial court conducted a plea colloquy with Ralph. During the colloquy, Ralph stated that he fully understood the charges against him and that he fully understood what the Commonwealth would need to prove. Ralph also confirmed that he had consulted with his attorney and that they had discussed possible defenses to the charges. The trial judge asked, "Are you entering these pleas of guilty freely and voluntarily?" Ralph answered, "Yes, sir." The trial judge continued, "Are you entering these pleas of guilty because you are, in fact, guilty of the crimes charged?" Ralph responded, "Yes, sir."

Ralph assured the court that he had not taken any medications or substances and did not have any mental condition that prevented him from understanding the proceedings. He acknowledged that he was waiving his rights to plead not guilty and to have a trial. He confirmed that no one had forced or threatened him to enter his pleas and that no one had made any promises outside the written plea agreement. He stated that he understood everything in the plea agreement. He indicated that he understood all of the trial judge's questions, and he did not ask any questions of the trial court.

The trial court proceeded to sentence Ralph according to the parties' sentencing recommendation as set out in the plea agreement. Therefore, the trial court sentenced Ralph to fifty-three years of incarceration with thirty-eight years suspended—for an active sentence of fifteen years. This appeal followed.

## II. ANALYSIS

Ralph assigns two errors on appeal. He first contends that "[t]he trial court erred in accepting Ralph's pleas of guilty to five felony counts" because "Ralph did not enter voluntary, knowing, and intelligent pleas to the charges against him." Second, he argues, "The sentencing court abused its discretion in sentencing Ralph pursuant to a plea agreement to a total of 53 years in prison, with 38 years suspended, where there were significant mitigating circumstances to which the sentencing court failed to give proper weight."

### A. Ralph's Guilty Pleas

Rule 5A:18 provides, "No ruling of the trial court or the Virginia Workers' Compensation Commission will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." "The rule strives to ensure 'the trial court has an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and

- 3 -

reversals.'" *Commonwealth v. Bass*, 292 Va. 19, 26 (2016) (quoting *Brown v. Commonwealth*, 279 Va. 210, 217 (2010)).

In this case, before the trial court accepted the plea agreement, the trial court conducted a thorough plea colloquy in accordance with Rule 3A:8 to determine the voluntariness of Ralph's pleas. *See* Rule 3A:8(b)(1) ("A circuit court may not accept a plea of guilty or nolo contendere to a felony charge without first determining that the plea is made voluntarily with an understanding of the nature of the charge and the consequences of the plea."). Ralph asserts that the good cause exception to Rule 5A:18 applies here because he "had little opportunity to move for a withdrawal of his guilty pleas and didn't fully understand the consequences of his guilty pleas until it was too late to move for withdrawal of the pleas."

"The Court may only invoke the 'good cause' exception where an appellant did not have the *opportunity* to object to a ruling in the trial court; however, when an appellant 'had the opportunity to object but elected not to do so,' the exception does not apply." *Perry v. Commonwealth*, 58 Va. App. 655, 667 (2011) (emphasis added) (quoting *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000)). The extensive plea colloquy discussed *supra* demonstrates that the trial court afforded Ralph ample opportunity to object before his guilty pleas became final. Ralph could have objected during the October 26, 2020 hearing when the trial court accepted his guilty pleas, or he could have moved to withdraw his pleas for up to twenty-one days after the trial court entered its sentencing order. Code § 19.2-296. However, Ralph never indicated that there was any issue during the plea colloquy—and never moved to withdraw his guilty pleas at any point during the numerous days after the hearing while the trial court still retained jurisdiction over the matter. We therefore reject Ralph's contention that the good cause exception to Rule 5A:18 applies here.

Ralph also urges this Court to apply the ends of justice exception to Rule 5A:18. This Court "considers two questions when deciding whether to apply the ends of justice exception: (1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice." *Williams v. Commonwealth*, 294 Va. 25, 27-28 (2017) (quoting *Bass*, 292 Va. at 27). "The 'ends of justice' exception to Rule 5A:18 is 'narrow and is to be used sparingly.'" *Melick v. Commonwealth*, 69 Va. App. 122, 146 (2018) (quoting *Pearce v. Commonwealth*, 53 Va. App. 113, 123 (2008)).

In this case, Ralph acknowledged during the plea colloquy that he understood the charges against him and that he understood what the Commonwealth needed to prove. The trial judge specifically asked Ralph, "Are you entering these pleas of guilty freely and voluntarily?" Ralph answered, "Yes, sir." The trial judge then also asked, "Are you entering these pleas of guilty because you are, in fact, guilty of the crimes charged?" Again, Ralph answered, "Yes, sir." The record of the plea colloquy thus shows that Ralph entered valid guilty pleas. We certainly cannot say that this case falls within the narrow category of cases in which the record affirmatively shows a miscarriage of justice so grave that this Court would attain the ends of justice by considering an argument that was never made to the trial court. Consequently, we do not reach Ralph's argument—made for the first time on appeal—that the trial court erred in accepting his guilty pleas.

### B. Ralph's Sentence

Finally, Ralph argues that the trial court "abused its discretion in sentencing Ralph pursuant to a plea agreement to a total of 53 years in prison, with 38 years suspended[.]" "The determination of sentencing lies within the sound discretion of the trial court." *Martin v. Commonwealth*, 274 Va. 733, 735 (2007). "A sentencing decision will not be reversed unless the trial court abused its discretion." *Id.* "[W]hen a statute prescribes a maximum imprisonment

penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). Ralph does not argue that his sentences exceeded the applicable statutory maximum for any of his convictions. Instead, he asserts that "there were significant mitigating circumstances to which the sentencing court failed to give proper weight." However, Ralph expressly agreed to the sentence he received as part of the plea agreement. The plea agreement specifically recommended a sentence of fifty-three years of incarceration with thirty-eight years suspended, for an active sentence of fifteen years. The trial court certainly did not err in sentencing Ralph according to the agreement that Ralph himself made with the Commonwealth. Furthermore, the General Assembly has restricted appellate review of sentencing decisions. *See* Code § 19.2-298.01(F). Likewise, the Supreme Court has previously stated, "[O]ur view adheres to the 'general proposition that once it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end.'" *Du*, 292 Va. at 565 (quoting *Dorszynski v. United States*, 418 U.S. 424, 431 (1974)). In this case, Ralph's sentences were "within the statutory range[s], and our task is complete." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018); *see also Du*, 292 Va. at 564-65.

## III. CONCLUSION

In short, Ralph never indicated that there was any issue when the trial court accepted his guilty pleas—and never at any point moved to withdraw his guilty pleas while the trial court retained jurisdiction over the matter. Furthermore, the record of the plea colloquy shows that Ralph entered valid guilty pleas to each of the charges against him. Therefore, Rule 5A:18 precludes Ralph from arguing for the first time on appeal that the trial court erred in accepting his guilty pleas.

Finally, Ralph assigns error on appeal to the sentence he received, but he expressly agreed to the sentence that was set out in the plea agreement.  The trial court imposed the exact sentence outlined in the written plea agreement that Ralph and the Commonwealth had requested.  In addition, Ralph's sentence fell within the applicable statutory range for each of his convictions so we cannot say that the trial court abused its discretion in any way.  Consequently, we uphold the judgment of the trial court.

*Affirmed.*