# COURT OF APPEALS OF VIRGINIA

## Record No. 1609-24-1

JAMES THOMAS DAVIS

v.

COMMONWEALTH OF VIRGINIA

Present: Judges Athey, Friedman and Callins

Argued at Williamsburg, Virginia

Opinion Issued June 16, 2026

### FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Johnny E. Morrison, Judge

Alyssa Joy Kreps, Assistant Public Defender (W. McMillan Powers, Assistant Public Defender, on brief), for appellant.

Aaron J. Campbell, Senior Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

### PUBLISHED OPINION BY
### JUDGE DOMINIQUE A. CALLINS

In this appeal, the Court is asked yet again to demystify the language of Virginia's probation statutes. James Thomas Davis appeals the trial court's order revoking his suspended sentence on a technical violation and imposing three years' active incarceration. He contends that the Commonwealth failed to establish his identity at the revocation hearing or prove the existence of a first technical violation. He also contends that his sentence exceeds the statutory limit. Although we affirm the trial court's decision to revoke Davis's suspended sentence, we hold that the court erred by sentencing him to more than 14 days, which is prohibited under Code § 19.2-306.1(C). Accordingly, we affirm in part, reverse in part, and remand for resentencing.

---

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

BACKGROUND[2]

In February 2006, Davis pleaded guilty to rape, object sexual penetration, forcible sodomy, carnal knowledge of a child between 13 and 15 years old, and two counts of aggravated sexual battery. The Honorable Johnny E. Morrison accepted Davis's pleas and sentenced him to 30 years' incarceration with 14 years suspended, with 5 years of supervised probation to follow Davis's release.

Following his release, Davis moved to Texas and began his supervised probation under Texas Probation and Parole pursuant to an approved interstate compact transfer. Four years later, in 2023, Judge Morrison revoked Davis's probation after he committed his first technical violation by failing to follow his probation officer's instructions and testing positive for illegal substances. The court resuspended his entire sentence on the condition he serve two years of supervised probation.

Upon his release, Davis told his Virginia probation officer, Marion Jones, that he intended to move back to Texas. Officer Jones reminded him that Texas probation needed to approve his address. But Texas probation could not do so because of the address's proximity to child safety zones. A few weeks later, the interstate compact system notified Officer Jones that Davis was in Texas without permission. Officer Jones filed a major violation report (MVR), alleging that Davis failed to follow the probation officer's instructions and changed his residence without permission. By March 2024, Virginia's probation office did not know Davis's location, prompting Jones to file an MVR addendum asserting that Davis had absconded. Davis was arrested later that year on a capias.

---

[2] We review the facts in the light most favorable to the prevailing party in the circuit court—here, the Commonwealth. *Burford v. Commonwealth*, 78 Va. App. 170, 179 (2023). We also unseal facts found in the sealed record only to the extent we must discuss them. *Brown v. Va. State Bar ex rel. Sixth Dist. Comm.*, 302 Va. 234, 240 n.2 (2023).

At Davis's second revocation hearing before Judge Morrison, the Commonwealth initially moved to dismiss the case because Davis's counsel told the Commonwealth that Davis had been reporting to a Texas probation officer. Virginia probation officer Raymond Godino testified. Officer Godino read the MVR allegations and addendum into the record. Initially, Officer Godino could not verify whether his office transferred Davis's probation to Texas. After the circuit court directed him to check the probation office's records, Officer Godino confirmed Davis was neither transferred to Texas nor was he on probation in Texas. Because Officer Godino's confirmation vitiated Davis's representations, the circuit court "denied th[e] motion [to dismiss]."

At the close of the Commonwealth's evidence, Davis moved to strike. He argued that the Commonwealth failed to identify Davis as the probationer and that the MVR contained "hearsay and conclusions." He also argued that the Commonwealth failed to show Davis signed any rules of probation related to the case. The court denied the motion and did the same upon Davis's renewal. It then found Davis in violation of his probation.

At sentencing, Davis contended that the MVR alleged only a second technical violation, limiting his sentence to no more than 14 days. The court disagreed, citing "new changes" in the law. Finding Davis in violation, the court revoked his suspended sentences, resuspending all but three years, and ordered three years of supervised probation. This appeal followed.

ANALYSIS

Davis challenges the sufficiency of the evidence to prove his identity as the probationer and the circuit court's interpretation and application of Code § 19.2-306.1. We review the circuit court's revocation decision to determine whether the circuit court abused its discretion. *Burford v. Commonwealth*, 78 Va. App. 170, 179 (2023). Circuit courts abuse their discretion by giving significant weight to improper factors, failing to consider proper factors, or committing a clear

error of judgment. *Lawlor v. Commonwealth*, 285 Va. 187, 213 (2013). But we review Davis's statutory interpretation arguments de novo. *Berry v. Bd. of Supervisors*, 302 Va. 114, 127 (2023). Through these lenses, we consider Davis's arguments in turn.

I. Identity

Davis first argues that the Commonwealth failed to prove his identity at the revocation hearing. We disagree.

Probationers are not entitled to the full panoply of due process protections afforded during the criminal prosecution. *Price v. Commonwealth*, 51 Va. App. 443, 446 (2008). Revocation proceedings involve a mere "'modification of the sentence' imposed for [the] prior conviction[s]." *Alsberry v. Commonwealth*, 39 Va. App. 314, 318 (2002) (quoting *Merritt v. Commonwealth*, 32 Va. App. 506, 508 (2000)). So during these ancillary proceedings, the sentencing court wields wide discretion. *Johnson v. Commonwealth*, 296 Va. 266, 276 (2018). The sentencing court need not observe "formal procedures," nor do the rules of evidence apply. *Id.* In fact, the court may consider evidence "that would not be admissible in an adversar[ial] criminal trial," including hearsay evidence. *Davis v. Commonwealth*, 12 Va. App. 81, 84 (1991) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)). In tandem, the Commonwealth is not obligated to prove beyond a reasonable doubt that the violation occurred; the allegation need only be supported by preponderant evidence. *See* Code § 19.2-306.1(C); *Cox v. Commonwealth*, 65 Va. App. 506, 520 n.3 (2015); *Burford*, 78 Va. App. at 180.

Here, the circuit court's finding that Davis was the probationer was not plainly wrong or without evidentiary support. Davis essentially conceded this fact by telling the circuit court that he had not absconded because he was on probation in Texas, joining the Commonwealth's motion to dismiss the violations on that basis. Davis's counsel also confirmed "that [Davis] turned himself in," which is circumstantial evidence of Davis's belief that he was the

- 4 -

probationer.  Though Officer Godino had not supervised Davis before, he had a photograph of Davis and could, logically, identify him based on it.  And, setting all this aside, Judge Morrison could reliably identify Davis, having presided over Davis's guilty plea, sentencing hearing, and first revocation hearing.  *See Moss v. Commonwealth*, No. 1320-02-3, slip op. at 6-7 (Va. Ct. App. Apr. 22, 2003) (holding that a judge's familiarity with a probationer from prior hearings considered with the whole record was sufficient to establish identity "even without the direct identification by the probation officer").[3]  Thus, Davis's own representations, coupled with Judge Morrison's familiarity with him,[4] sufficiently support the circuit court's identity finding.

II.  Sentencing

Davis argues that his absconding violation should be treated as a second technical violation.  He asserts that—absent two prior technical violations or a prior technical violation qualifying for the enhanced penalty—his absconding violation cannot be treated as a third technical violation.  We agree.

Established principles govern our interpretation of Code § 19.2-306.1.  We must "ascertain and give effect to legislative intent, as expressed by the language used in the statute." *Norfolk Dep't of Hum. Servs. v. Goldberg*, 81 Va. App. 667, 676 (2024) (quoting *Verizon Va. LLC v. State Corp. Comm'n*, 302 Va. 467, 477 (2023)).  And we must give effect to every word

---

[3] We consider our unpublished opinions for their persuasive value, but we do not treat them as "binding authority."  Rule 5A:1(f).

[4] Judge Morrison's familiarity with Davis is distinguishable from a trial judge's general knowledge of a subject matter related to a proceeding.  *See Taylor v. Commonwealth*, 78 Va. App. 147 (2023).  In *Taylor*, we underscored the principle that "[i]ndividual and extrajudicial knowledge on the part of a judge will not dispense with proof of facts not judicially cognizable, and cannot be resorted to for the purpose of supplementing the record." *Id.* at 155 (alteration in original) (quoting *Bernau v. Nealon*, 219 Va. 1039, 1041 (1979)).  Judge Morrison's knowledge of Davis's identity did not require the judge to consider facts outside the record.  Because revocation proceedings are ancillary and derivative of the underlying criminal proceedings, a trial judge need not ignore its prior dealings with the accused for purposes of identifying the accused as such.  *Cf. Alsberry*, 39 Va. App. at 318.

and part of the statute. *Wills v. Wills*, 72 Va. App. 743, 755 (2021). In doing so, we assign "the words used their ordinary and popular meaning, unless it plainly appears that they were used in some other sense." *Id.* (quoting *Epps v. Commonwealth*, 47 Va. App. 687, 714 (2006) (en banc), *aff'd*, 273 Va. 410 (2007)). We prefer "plain, obvious, and rational" interpretations of the words used over "any curious, narrow, or strained construction." *Stanton v. Va. Beach-Fire Operations*, 79 Va. App. 587, 592 (2024) (quoting *Ford Motor Co. v. Gordon*, 281 Va. 543, 549 (2011)).

Code § 19.2-306.1 distinguishes between technical and non-technical violations. *Commonwealth v. Delaune*, 302 Va. 644, 655-56 (2023). Technical violations are "based on conduct that specifically matches one of the enumerated technical violations set forth in Code § 19.2-306.1(A)." *Id.* at 657. Based on this distinction, Code § 19.2-306.1(C) prescribes a progressive sentencing structure for technical violations:

> The court shall not impose a sentence of a term of active incarceration upon a first technical violation of the terms and conditions of a suspended sentence or probation. . . . [I]f the court finds, by a preponderance of the evidence, that the defendant committed a second technical violation and . . . cannot be safely diverted from active incarceration through less restrictive means, the court may impose not more than 14 days of active incarceration for a second technical violation. The court may impose whatever sentence might have been originally imposed for a third or subsequent technical violation. . . . [A] first technical violation based on [a firearm or absconding violation] shall be considered a second technical violation, and any *subsequent* technical violation *also* based on [a firearm or absconding violation] shall be considered a third or subsequent technical violation.

(Emphases added). The statute's language, on this point, is clear and unambiguous. The court may impose no active incarceration for a first technical violation, up to 14 days for a second technical violation, and up to "whatever sentence might have been originally imposed for a third or subsequent technical violation." Code § 19.2-306.1(C). But when a probationer commits a firearm or absconding violation, this timeline is accelerated. *Id.*

- 6 -

The sentencing enhancement for firearm and absconding violations sits within a single sentence containing three clauses separated by commas. Under the first clause, when a probationer commits a first technical violation, *and* that violation is based on a firearm or absconding violation, the court may sentence the probationer to up to 14 days' active incarceration. *See Nalls v. Commonwealth*, 79 Va. App. 712, 719 (2024) ("'[F]irst technical violation' is a single grammatical unit modified by 'based on [a firearm or absconding violation].'" (quoting Code § 19.2-306.1(C))). Then, under the second clause, "any *subsequent* technical violation *also* based on [a firearm or absconding violation] shall be considered a third or subsequent technical violation." Code § 19.2-306.1(C) (emphases added). The word "subsequent" means "following in time" or "following in order of place." *Subsequent*, *Webster's Third New International Dictionary* (2002). The word "also" means "in the same manner as something else." *Also*, *Webster's Third New International Dictionary*, *supra*. Grammatically, the technical violation referenced in the second clause must follow the technical violation referenced in the first clause. Further, the probationer must commit the violation in the same manner as the predicate one, i.e., a firearm or absconding violation.

We are unpersuaded by the Commonwealth's interpretation, which insists that Code § 19.2-306.1(C) transforms *every* firearm or absconding violation into two technical violations. This interpretation would require us to delete the words "subsequent" and "also" from the statute, and we may not "add[] language to or delet[e] language from a statute." *Berry*, 302 Va. at 133 (alterations in original) (quoting *Appalachian Power Co. v. State Corp. Comm'n*, 284 Va. 695, 706 (2012)). Heeding our obligation to give effect to every word used by the General Assembly, we cannot abide the Commonwealth's interpretation.

Our pronouncements in *Heart v. Commonwealth*, 75 Va. App. 453 (2022), only underscore our interpretation today. True, in *Heart* we explained that the sentencing

enhancement clause of Code § 19.2-306.1 treats firearm and absconding violations more seriously than others by accelerating past the "first technical violation" sentencing "tier." 75 Va. App. at 470. But we also explained that for firearm and absconding violations, "a probationer gets only one warning before facing the potential of a significant sentence." *Id.* This warning is embedded in the General Assembly's language. And since we are obligated to construe these "highly remedial" probation statutes "liberally," interpreting the sentencing enhancement in a manner that deprives the probationer of this warning would be in derogation of the plain text. *Diaz-Urrutia v. Commonwealth*, 77 Va. App. 182, 190-91 (2023). By sentencing Davis as if he had committed a third technical violation, thereby skipping over this legislatively-mandated warning, the circuit court deprived him of the opportunity to adjust his conduct and avoid the ultimate penalty under the statute.

We conclude that the General Assembly carefully crafted Code § 19.2-306.1(C) so that a probationer who commits a first technical violation based on absconding skips the first technical violation tier. If they abscond again, that is a subsequent violation also based on absconding, which can be treated as a third technical violation under Code § 19.2-306.1. But when the probationer's first technical violation is based on conduct other than firearm possession or absconding, a second technical violation based on absconding is not treated as a third technical violation. In short, a probationer may be subject to the full sentence if they (a) commit three technical violations, or (b) commit two technical violations based on firearms or absconding.

That interpretation does not produce an absurd result, as the Commonwealth claims. An absurd construction renders a statute's text "internally inconsistent" or "otherwise incapable of operation." *Lucas v. Woody*, 287 Va. 354, 369 (2014) (quoting *Covel v. Town of Vienna*, 280 Va. 151, 158 (2010)). Our reading does not treat Davis more leniently than a probationer whose second technical violation is for less serious conduct. Both may be sentenced to no more than 14

- 8 -

days, as the statute requires.  That the Commonwealth may consider the statute too lenient does not render it internally inconsistent or incapable of operation.[5]

As a result, the trial court erred in sentencing Davis to more than 14 days' active incarceration.  If a sentence "falls outside 'the lawful boundaries of applicable sentencing statutes and constitutional limitations,'" it must be reversed.  *Heart*, 75 Va. App. at 471 (quoting *Minh Duy Du v. Commonwealth*, 292 Va. 555, 563 (2016)).  Accordingly, we reverse Davis's sentence and remand for resentencing.

CONCLUSION[6]

For these reasons, we affirm the circuit court in part, reverse in part, and remand for resentencing in accordance with this opinion and Code § 19.2-306.1(C).

*Affirmed in part, reversed in part, and remanded.*

---

[5] The Commonwealth's reliance on *Nalls v. Commonwealth* is also unavailing.  There, Nalls had two technical violations before committing a technical violation for absconding.  *Nalls*, 79 Va. App. at 715.  We rejected Nalls's argument that technical violations based on firearms or absconding should be counted on a separate track from other technical violations, such that his absconding violation should have counted as only a second technical violation.  *Id.* at 717-21.  Instead, we held that, because Nalls's absconding violation was his third technical violation, it could be punished as a third technical violation.  *Id.* at 721.  We rejected Nalls's claim that the basis of his violation entitled him to a lesser penalty than other probationers who committed three technical violations.  *Id.* at 720-21.  Here, Davis had only one prior technical violation, and we hold that because his second technical violation was not "also based on" absconding, it could only be punished as a second technical violation."  Code § 19.2-306.1(C).

[6] Davis also argues that the Commonwealth failed to establish that he committed a predicate first technical violation, but we cannot reach this argument.  We only consider reversal based on objections raised with "reasonable certainty at the time of the ruling" from which Davis appeals.  Rule 5A:18.  Davis concedes that he did not preserve his argument but asks us to invoke the ends-of-justice exception to Rule 5A:18.  We decline his invitation.  "Error alone, even a violation of constitutional principles, is not sufficient to warrant application of the ends of justice exception."  *West v. Commonwealth*, 43 Va. App. 327, 339 (2004).  Davis bore the burden of demonstrating to us that he suffered a "grave injustice" characterized by an inexcusable "denial of essential rights."  *Winslow v. Commonwealth*, 62 Va. App. 539, 546-47 (2013) (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 513 (2009)).  Given that the record is replete with evidence reflecting Davis's prior technical violation, we conclude that Davis fails to carry his burden.